UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THREE AFFILIATED TRIBES OF THE
FORT BERTHOLD INDIAN
RESERVATION,

      Plaintiff,

          v.                                            Civil Action No. 08-1601 (JDB)

UNITED STATES OF AMERICA,
et al.,

      Defendants.

## MEMORANDUM OPINION

Plaintiff Three Affiliated Tribes of the Fort Berthold Reservation ("Three Tribes") brings this action against the United States of America, Michael O. Leavitt, Secretary of the U.S. Department of Health and Human Services, Robert G. McSwain, Director of the Indian Health Service ("IHS"), and Charlene M. Red Thunder, Acting Area Director of the IHS, in their official capacities (collectively, "defendants"). The dispute arises from a contract proposal Three Tribes submitted to defendants to provide health services within its reservation pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), 25 U.S.C. § 450 et seq. Three Tribes claims that defendants improperly declined two portions of that proposal: (1) inclusion of contract support costs ("CSCs") in Three Tribes' annual funding agreement (Count I); and (2) permission to provide health care services to non-Indians pursuant to the Indian Health Care Improvement Act ("IHCIA"), 25 U.S.C. § 1680c(b) (Count II). Now before the Court is defendants' motion to dismiss. For the reasons explained below, the motion will be denied.

**BACKGROUND**

I.  **Statutory and Regulatory Background**

   A.   *The ISDEAA*

Congress passed the ISDEAA in 1975 to promote Indian self-determination by providing for the transition of federal programs and services for Indians, including health care services, to the control of Indian communities.  See 25 U.S.C. § 450a.  Upon the request of Indian tribes, the Secretary of Health and Human Services or the Secretary of the Interior is required to enter into contracts with those tribes ("self-determination contracts" or "ISDEAA contracts") to provide such services.  Id. § 450f(a)(1).  The ISDEAA defines these "self-determination contracts" as contracts "between a tribal organization and the appropriate Secretary for the planning, conduct and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law."  Id. § 450b(j).  The appropriate Secretary must approve all proposals for self-determination contracts unless he or she provides a written "declination finding" that shows the proposal falls into one of five enumerated statutory exceptions.[1]  Id. §§

---

[1] The ISDEAA provides:

> [T]he Secretary shall, within ninety days after receipt of the proposal, approve the proposal and award the contract unless the Secretary provides written notification to the applicant that contains a specific finding that clearly demonstrates that, or that is supported by a controlling legal authority that--
>
> (A) the service to be rendered to the Indian beneficiaries of the particular program or function to be contracted will not be satisfactory;
>
> (B) adequate protection of trust resources is not assured;
>
> (C) the proposed project or function to be contracted for cannot be

450f(a)(2), (4).

Each self-determination contract must include the provisions of a "model agreement" provided by the ISDEAA, as well as an annual funding agreement. Id. §§ 450*l*(a), (c). The annual funding agreement must contain "(i) terms that identify the programs, services, functions, and activities to be performed or administered, the general budget category assigned, the funds to be provided, and the time and method of payment; and (ii) such other provisions, including a brief description of the programs, services, functions, and activities to be performed (including those supported by financial resources other than those provided by the Secretary), to which the parties agree." Id. § 450*l*(c) (providing that an annual funding agreement be attached to the model agreement). The ISDEAA contract must also include "such other provisions as are agreed to by the parties." Id. § 450*l*(a).

There are two categories of contract funding under the ISDEAA. The first category -- "base funding" -- must consist of the amount of funding that the appropriate Secretary would have spent on the program had it been administered by the federal government. 25 U.S.C. § 450j-1(a)(1). The second category, CSCs, must be provided to cover other reasonable costs

---

        properly completed or maintained by the proposed contract;

        (D) the amount of funds proposed under the contract is in excess of the applicable funding level for the contract, as determined under section 450j-1(a) of this title; or

        (E) the program, function, service, or activity (or portion thereof) that is the subject of the proposal is beyond the scope of programs, functions, services, or activities covered under paragraph (1) because the proposal includes activities that cannot lawfully be carried out by the contractor.

25 U.S.C. § 450f(a)(2).


incurred by the contracting tribe that either would not have been incurred by the government in the operation of the program or are provided from resources other than those under the contract. Id. § 450j-1(a)(2). The provision of ISDEAA contract funds is "subject to the availability of appropriations." Id. § 450j-1(b). For fiscal year 2008, Congress appropriated funding "not to exceed $271,636,000" for CSCs, of which "not to exceed $5,000,000 may be used for [CSCs] associated with new or expanded self-determination contracts . . . ." Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844, 2135 (2007).

      B.      *The IHCIA*

Much of the IHS's authority to provide health care services to Indians flows from the IHCIA. Defs.' Mem. at 3. Congress passed the IHCIA in 1976 to facilitate the federal provision of health services to Indian communities. 25 U.S.C. § 1601. The IHCIA states that Indian tribes may provide health services to non-Indians in health care facilities operated under ISDEAA contracts. Id. § 1680c(b)(1)(B). The decision to provide these services must be a joint decision by the Secretary of Health and Human Services and the Indian tribe. Id. § 1680c(b)(1)(A)(ii).

**II.**    **Factual Background**

Three Tribes is a federally recognized Indian tribe whose headquarters are on the Fort Berthold Indian Reservation in New Town, North Dakota. Compl. ¶ 5. On December 20, 2007, Three Tribes submitted a self-determination contract proposal to the IHS to assume responsibility for all programs, functions, services, and activities on its reservation for which it had not already contracted. Id. ¶ 18. The proposal included a request for CSCs and a request for permission to provide health care services to non-Indians under the IHCIA ("IHCIA proposal"). See id. ¶ 1. The IHS received the self-determination contract proposal on January 2, 2008, id. ¶

18, and responded in a letter informing Three Tribes that it would have to agree to accept no CSC funding in fiscal year 2008 in order to have its proposal approved, id. ¶ 19. The IHS's letter reflected a policy decision -- originally adopted in 2006 -- to distribute congressional appropriations for new or expanded CSC contracts as shortfall for existing contracts. Id. ¶ 20. In a letter dated January 28, 2008, Three Tribes rejected the IHS's proposal, and informed the IHS that it believed Congress had specifically appropriated $5,000,000 for CSC funding for new or expanded ISDEAA contracts. Id. ¶ 21. The IHS and Three Tribes held negotiations on February 6, 2008 to resolve this dispute. Id. ¶ 22. As a result, the IHS declined only Three Tribes' request for CSC funding and approved its request for base funding. Id. ¶¶ 22-23. The IHS and Three Tribes entered a new ISDEAA contract on March 31, 2008 that reflected this agreement. Id. ¶¶ 23-24.

That same day -- and consistent with their negotiations -- the IHS sent Three Tribes a letter declining its request for CSCs. Id. The IHS declined the CSC proposal because "all the money for [CSCs] has been or will be used to pay CSC[s] related to existing contracts and compacts." Id. ¶ 25. In addition, the IHS declined Three Tribes' IHCIA proposal. Id. ¶ 24. Three Tribes contends that this was a declination decision based on one of the ISDEAA's five declination criterion, i.e., that the proposal "include[d] activities that [could not] lawfully be carried out by the contractor." Id. ¶ 27 (citing 25 U.S.C. § 450f(a)(2)(E)). Defendants, however, assert that this decision was an act of agency discretion, not a declination decision under the ISDEAA, because they were not required under that statute to include the IHCIA proposal. See Defs.' Mem. at 42.

Three Tribes filed the present complaint on September 17, 2008. Three Tribes claims

that defendants violated the ISDEAA by improperly declining its CSC proposal (Count I) and its IHCIA proposal (Count II).  Defendants filed a motion to dismiss both counts of the complaint on December 17, 2008.  They contend that Count I should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) because at least nineteen Indian tribes with ongoing ISDEAA contracts ("ongoing contractors") are required parties to this action under Fed. R. Civ. P. 19, but joinder is not feasible due to their sovereign immunity.  Defs.' Mem. at 22-23.  They argue that Count II should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the ISDEAA's waiver of sovereign immunity does not apply to this claim.  Id. at 35.  The motions are now fully briefed and ripe for resolution.

## **STANDARD**

**I.     Rule 12(b)(7)**

A defendant may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  As with all Rule 12 motions, the moving party bears the burden of persuasion.  See Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank, 659 F.2d 234, 242 (D.C. Cir. 1981). Rule 19 sets forth a two-step analysis for the required joinder of parties.[2]  First, courts must

---

[2] Rule 19 provides:

> (a) Persons Required to Be Joined if Feasible. (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:  (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

determine whether a party is required and must therefore be joined. Fed. R. Civ. P. 19(a)(1). If so, and if joinder is not feasible, then the court must next balance the equitable factors set forth in Rule 19(b) to decide if the party is indispensible. Fed. R. Civ. P. 19(b). The Rule 19 inquiry is "complex, and determinations are case specific." Philippines v. Pimental, 128 S. Ct. 2180, 2184 (2008). Courts may consider materials outside the pleadings in resolving a motion to dismiss under Rule 12(b)(7), Anderson v. Hall, 755 F. Supp. 2, 5 (D.D.C. 1991), and consideration of such materials will not convert the motion into a Rule 56 motion for summary judgment, see Estes v. Shell Oil Co., 234 F.2d 847, 849 n.5 (5th Cir. 1956).

## II.     Rule 12(b)(1)

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiffs here -- bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998)); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) ("[A] Rule 12(b)(1) motion imposes on the court

---

. . . (b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:  (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19.

an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993), "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990)). At the stage of litigation when dismissal is sought, a plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3.

## ANALYSIS

**I.     Count I -- Required Parties Under Rule 19**

Three Tribes claims that defendants improperly declined its proposal for CSCs under the ISDEAA. Compl. ¶ 39. Defendants respond that Count I should be dismissed pursuant to Rule 12(b)(7), regardless of its merits. Defs.' Mem. at 22. They contend that the ongoing contractors are required parties to this action under Rule 19, but that joinder is not feasible due to their

sovereign immunity.  Id. at 22-23.  Defendants assert that the ongoing contractors are required parties because their absence could impair their ability to maintain their CSC funding, and would subject the IHS to a risk of inconsistent obligations.  Id. at 26, 30-31.  Furthermore, because the ongoing contractors have divergent interests, defendants aver that they cannot adequately represent the ongoing contractors as absent parties.  Defs.' Reply at 11.

Rule 19 sets forth a two-step analysis for the required joinder of parties.  First, to determine whether an absent party is required, the Court must consider whether that party has a legally protected interest in the subject of the action such that the party's absence may impair or impede his or her ability to protect that interest.  Ramah Navajo Sch. Bd. v. Babbit, 87 F.3d 1338, 1351 (D.C. Cir. 1996); see Fed. R. Civ. P. 19(a)(1).  If the Court determines that a party is required, it must next balance the equitable factors set forth in Rule 19(b) to decide if the party is indispensible.[3]  Ramah, 87 F.3d at 1351.  According to Three Tribes, the ongoing contractors are not required parties because they do not have a legally protected interest in the funding at issue, which Congress appropriated specifically for "new or expanded" ISDEAA contracts.  See Pl.'s Opp'n at 16.  Defendants contend that the ongoing contractors do have a legally protected interest because CSC funding is a limited fund -- defendants would have to reduce funding to the ongoing contractors in order to provide the requested CSCs to Three Tribes.  Defs.' Mem. at 25.  But even assuming that the ongoing contractors have a legally protected interest in the subject of

---

[3] Because the Court finds that the ongoing contractors are not required parties under Rule 19(a), it need not address these equitable factors to assess whether the ongoing contractors are indispensible.

this action, the ongoing contractors are not required parties under Ramah.[4]

Ramah held that nonparty tribes like the ongoing contractors here are not required parties under Rule 19. 87 F.3d at 1352.[5] At issue in Ramah was the decision by the Secretary of the Interior (the "Secretary") to reduce the plaintiff-tribes' self-determination contract funding by 50 percent after these tribes failed to meet a newly-imposed deadline for filing ISDEAA proposals. Id. at 1342-43. The Secretary sought to dismiss the case under Rule 19. Id. at 1343. The court determined that both nonparty tribes with ISDEAA contracts and the Secretary shared an interest in following the agency policy of funding existing contracts on a pro rata basis. Id. at 1351-52. The court held that because the Secretary could adequately represent the nonparty tribes, those tribes were not required parties under Rule 19. Id. at 1352; see also Cassidy v. United States, 875 F. Supp. 1438, 1445 (E.D. Wash. 1994) (holding that nonparty tribes were not required parties under Rule 19(a) because the United States could adequately represent them).

As in Ramah, the ongoing contractors here share defendants' interest in following

---

[4] The Supreme Court's reasoning in Cherokee Nation of Oklahoma v. Leavitt, 543 U.S. 631 (2005), calls into question defendants' assertion that funding for the ongoing contractors' self-determination contracts must come from the limited fund of congressional appropriations for ISDEAA contracts. In Cherokee, the Court held that the IHS could not avoid its contractual obligation to pay CSCs to tribal contractors on the ground of "insufficient appropriations" so long as Congress had appropriated sufficient legally unrestricted funds to the IHS to pay the contracts in question. 543 U.S. at 637-38. In other words, congressional appropriations specifically earmarked for CSCs are not the only fund from which to pay the ongoing contractors' CSCs. Although the parties' briefs do not address this issue, the availability of unrestricted IHS funds may become significant as this case moves forward. Because the Court resolves the Rule 19 issue on other grounds, it need not address the limited fund issue for purposes of the present motion to dismiss.

[5] Ramah refers to "necessary" rather than "required" parties. 87 F.3d at 1350. In 2007, the Advisory Committee changed the wording of Rule 19 to refer to "required" instead of "necessary" parties. See Pimental, 128 S. Ct. at 2184. These changes were stylistic only, and do not affect the substance and operation of Rule 19. Id. at 2184-85.

existing IHS policy, which prioritizes funding ongoing self-determination contracts over providing CSCs for new contracts. See Pl.'s Opp'n, Ex. 2. Moreover, the ongoing contractors do not have conflicting interests among themselves, but rather share an interest in having their contracts funded as fully as possible under this policy. See id. Accordingly, under Ramah, defendants can adequately represent the interests of the ongoing contractors. Hence, disposing of this action in their absence will not "as a practical matter impair or impede [their] ability to protect" their interests under Rule 19. See Fed. R. Civ. P. 19(a)(1)(B)(i).

Defendants unsuccessfully attempt to distinguish Ramah from this case on two grounds. First, they argue that, unlike in Ramah, a judgment in favor of Three Tribes will necessarily result in reduced funding for the ongoing contractors. Defs.' Mem. at 26. However, although Ramah found that the nonparty tribes did not have a legally protected interest in the funds at issue, this determination was not essential to the court's holding. See 87 F.3d at 1351 ("Even if we were to assume that the nonparty [t]ribes did have a legally protected interest in the [funds], we would still conclude that they are not necessary parties.") (emphasis in original). Instead, the Secretary's ability to represent the nonparty tribes adequately was dispositive. Id. at 1352.

Second, defendants contend that this case is distinguishable from Ramah because the ongoing contractors have divergent interests that defendants cannot adequately represent. Defs.' Mem. at 29. The nonparty tribes and the Secretary in Ramah shared an interest in distributing congressionally-appropriated funding according to the government's published pro rata policy. Id. at 30; Ramah, 87 F.3d at 1351. Defendants portray the ongoing contractors here as having "highly individualized and divergent" interests that require "unique, contract-based arguments." Defs.' Mem. at 30. But the nonparty tribes in Ramah were no less unique and individualized

than the ongoing contractors are in this case. See 87 F.3d at 1341 (describing the individualized negotiation process that each tribe participates in to determine its annual self-determination contract funding). Nonetheless, Ramah held that the Secretary could adequately represent the nonparty tribes because they shared a broad interest in having existing ISDEAA contracts funded as completely as possible. See id. at 1351-52. Here, as in Ramah, it is in the interest of both the ongoing contractors and defendants to continue to follow the IHS's policy of funding existing self-determination contracts before providing CSCs for new contracts. See Pl.'s Opp'n, Ex. 2. Hence, this ground for distinguishing Ramah is unpersuasive as well.

Defendants contend that this Court should look to cases from the Ninth and Tenth Circuits instead of Ramah. Defs.' Mem. at 27-28. The Ninth Circuit case involved an Indian tribe, the Makah, which had federal treaty rights to use fishing grounds off the coast of Washington and brought suit after its requests for higher fishing quotas were rejected. Makah Indian Tribe v. Verity, 910 F.2d 555, 556-57 (9th Cir. 1990). The court found that the supply of area fish was a limited fund, and dismissed the case for failure to join tribes that had fishing treaty rights that would have been negatively impacted by a judgment for the Makah. Id. at 560. The court held that the government could not adequately represent the nonparty tribes because they had divergent interests, which arose from "a complex judicial and administrative scheme" created and monitored by federal district courts, multiple state governments, the federal government, and tribal representatives. Id. at 556, 559. In contrast, the funding of the ongoing contractors' self-determination contracts in the present case is exclusively the responsibility of the federal government. See Pl.'s Opp'n at 5. This distinction is meaningful because it shows that the federal government can adequately represent the ongoing contractors' interests without

risking inconsistency with rules and regulations outside of its authority.  Moreover, even assuming that the limited fund analogy applies to the limited congressional appropriations at issue in this case, Makah is further distinguishable because here both defendants and the ongoing contractors share the interest of fully funding all existing ISDEAA contracts.  See id., Ex. 2.

At issue in the Tenth Circuit case was the Department of the Interior's method of calculating the plaintiff-tribe's funding for its self-determination contract.  Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 995 (10th Cir. 2001).  Although five tribes including the plaintiff -- the Potawatomi tribe -- had negotiated a formula for dividing their federal ISDEAA appropriations among themselves, the Potawatomi brought suit to challenge the government's application of this formula.  Id. at 996.  The court held that the government could not adequately represent the other tribes' interests because "some tribes may gain, while some tribes may lose if the . . . Potawatomi prevail."  Id. at 999.  Unlike in Potawatomi, however, the ongoing contractors in the  present case do not have divergent interests, but rather share the common interest of having their self-determination contracts funded in full under existing IHS policy.  See Pl.'s Opp'n, Ex. 2.  Hence, neither Makah nor Potawatomi is applicable to this case.

Ramah, then, controls the outcome of the Rule 19 issue.  Here, as in Ramah, the ongoing contractors and defendants have a common interest in following existing IHS policy regarding ISDEAA contract funding, and the ongoing contractors share this interest among themselves.  See Pl.'s Opp'n, Ex. 2.  As discussed above, Makah and Potawatomi are distinguishable from this case.  Moreover, as a practical matter, defendants' argument, taken to its logical conclusion, would have far-reaching implications.  As defendants would have it, so long as Congress under-funds CSCs, the appropriate Secretary has unfettered discretion to reject new requests for CSC

funding. See 25 U.S.C. § 450m-1(a). But as Ramah itself noted, the ISDEAA "gives the district court jurisdiction over 'any civil action . . . arising under the Act,' not over 'any civil action arising under the Act in a year during which Congress appropriated full funding.'" Ramah, 87 F.3d at 1344 n.6. Hence, the "strong presumption in favor of reviewability of agency action," id. at 1343, underscores the Court's holding that the ongoing contractors are not required parties under Rule 19. Accordingly, defendants' motion to dismiss Count I of the complaint will be denied.

## II.     Count II -- Application of the ISDEAA Waiver of Sovereign Immunity

In Count II, Three Tribes argues that defendants improperly declined its IHCIA proposal to provide health care services to non-Indians. Compl. ¶¶ 41-42. Defendants seek dismissal of this count pursuant to Rule 12(b)(1). As they would have it, their refusal to include the IHCIA proposal in Three Tribes' self-determination contract falls outside the scope of the waiver of sovereign immunity in the ISDEAA.[6] Defs.' Mem. at 35. Three Tribes responds that the

---

[6] The ISDEAA waiver of sovereign immunity provides:

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this subchapter and, subject to the provisions of subsection (d) of this section and concurrent with the United States Court of Claims, over any civil action or claim against the Secretary for money damages arising under contracts authorized by this subchapter. In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this subchapter or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations promulgated hereunder (including immediate injunctive relief to reverse a declination finding under section 450f(a)(2) of this title

ISDEAA's waiver of sovereign immunity was intended to provide broad review rights, including the right to appeal the kind of declination decision challenged in Count II. Pl.'s Opp'n at 27-28.

This issue can be resolved by a straightforward analysis of the relevant statutes. The ISDEAA's waiver of sovereign immunity explicitly references "declination finding[s]." 25 U.S.C. § 450m-1(a). Declination findings -- rejections in whole or in part of self-determination contracts based on enumerated criteria -- are required if the appropriate Secretary chooses not to approve any part of a self-determination contract. 25 U.S.C. §§ 450f(a)(2), (4); see also 25 C.F.R. § 900.22. The IHCIA provides that the proposal at issue was part of Three Tribes' self-determination contract. 25 U.S.C. § 1680c(b)(1)(B) ("In the case of health facilities operated under a contract entered into under the [ISDEAA], the governing body of the Indian tribe or tribal organization providing health services under such contract is authorized to determine whether health services should be provided under such contract to individuals who are not eligible for such health services . . . .") (emphasis added). Hence, as part of Three Tribes' self-determination contract, the IHCIA proposal was entitled to a declination finding, which falls well within the ISDEAA's waiver of sovereign immunity.[7]

Defendants unsuccessfully attempt to circumvent the statutory language. Primarily, they contend that their decision to reject the IHCIA proposal was not a declination finding because it

---

        or to compel the Secretary to award and fund an approved
        self-determination contract).

  25 U.S.C. § 450m-1(a).

[7] Defendants' treatment of their decision to reject the IHCIA proposal as a declination finding underscores the Court's holding. Compl., Ex. 1 at 9 (citing ISDEAA § 450f(a)(2)(E) as the basis for declining the IHCIA proposal).

did not pertain to a mandatory term of Three Tribes' self-determination contract proposal.  Defs.' Mem. at 37.  They argue that the ISDEAA's waiver of sovereign immunity applies narrowly to required "dut[ies]," and the appropriate Secretary only has a duty to approve contract terms that are "for the benefit of Indians because of their status as Indians."  Id.; see 25 U.S.C. § 450f(a)(1)(E).  But defendants' argument is inconsistent with the ISDEAA's broad waiver of sovereign immunity that gives "[t]he United States district courts . . . original jurisdiction over any civil action or claim . . . arising under" the ISDEAA.  25 U.S.C. § 450m-1(a); see Ramah, 87 F.3d at 1344.  Moreover, the IHCIA proposal would have provided Three Tribes with several benefits because of its status as an Indian tribe.  Defendants, for example, point out "three federal benefits [that] accompany the extension of health benefits to otherwise ineligible persons: access to deeply discounted pharmaceuticals, enhanced billing under Medicaid and Medicare, and malpractice coverage under the Federal Tort Claims Act."  Compl., Ex. 1 at 8.  Hence, defendants' attempts to avoid the plain statutory language are unpersuasive.

In sum, based on the language of the ISDEAA and the IHCIA, the IHCIA proposal was part of Three Tribes' proposed self-determination contract, and defendants' decision not to include this term in the contract was a declination finding that is reviewable under the ISDEAA.  Accordingly, defendants' motion to dismiss Count II of the complaint will be denied.

## CONCLUSION

With respect to Count I of the complaint, the ongoing contractors are not required parties under Rule 19 because defendants can adequately represent their interests under Ramah.  With respect to Count II, the Court has subject matter jurisdiction because Three Tribes' challenge arises under the ISDEAA.  Accordingly, defendants' motion to dismiss will be denied.  A

separate order accompanies this memorandum opinion.

<div style="text-align: right;">
/s/<br>
JOHN D. BATES<br>
United States District Judge
</div>

Dated:  July 27, 2009